## STANDARD OIL CO. OF LOUISIANA v. HALL, Commissioner of Finance and Taxation of Tennessee, et al., and three other cases.

District Court, M. D. Tennessee, Nashville Division. August 20, 1927.

Nos. 304–306, 308.

1. Injunction 85(2)—Enforcement of statute resulting in oppressive prosecutions will be enjoined, if unconstitutional (Pub. Acts Tenn. 1927, c. 22; Shannon's Code Tenn. § 6437).

Equity will enjoin enforcement of a state law (Pub. Acts Tenn. 1927, c. 22), making it a misdemeanor, under Shannon's Code Tenn. § 6437, to sell gasoline without permit therefor from state superintendent of division of motors and motor fuels, where continuation of business of plaintiff gasoline corporations would result in oppressive prosecutions if the act should be determined invalid.

2. Constitutional law 242, 298(1)—Sales 48¾—State statute, empowering state bureau to fix sale price of gasoline, held invalid, as impairing freedom to contract (Const. U. S. Amend. 14; Pub. Acts Tenn. 1927, c. 22).

State act (Pub. Acts Tenn. 1927, c. 22), making it unlawful to sell gasoline without permit therefor from state superintendent of division of motors and motor fuels, confers on superintendent right to fix price at which gasoline shall be sold, and in such respect is invalid, as depriving both seller and purchaser of freedom to contract, a right guaranteed by Const. U. S. Amend. 14, subject to legitimate exercise of state's police power.

3. Constitutional law 242, 298(1)—Monopolies 10—Statute permitting state officers to fix price of gasoline invalid, as impairing right to contract, could not be upheld as method of suppressing monopolies (Pub. Acts Tenn. 1927, c. 22; Const. U. S. Amend. 14).

Since state statute (Pub. Acts Tenn. 1927, c. 22) making it unlawful to sell gasoline without obtaining permit therefor, and which permits state officer to fix selling price of gasoline within state, is invalid, within Const. U. S. Amend. 14, as impairing right of buyer and seller to contract, it cannot be upheld as a valid method of suppressing monopolies, declared to be one of aims of the act.

4. Constitutional law 38, 48—Statute is presumed valid, but must be declared invalid if clearly contrary to Constitution.

While statute should be considered in light of facts in legislative mind when it was enacted, and is entitled to presumption favoring validity, it is function of courts to hold it invalid, if it is clearly opposed to the Constitution.

5. Statutes 64(2)—Main purpose of state statute being to fix price of gasoline, entire statute was unconstitutional, as impairing right to contract (Const. U. S. Amend. 14; Pub. Acts Tenn. 1927, c. 22, § 13).

Since the main purpose of a state statute (Pub. Acts Tenn. 1927, c. 22) was to regulate and fix price at which gasoline should be bought and sold, and was unconstitution-

al within Const. U. S. Amend. 14, as impairing right of seller and buyer of gasoline to contract, entire statute was invalid, notwithstanding section 13 thereof, which provided that, if any section of the act should be held invalid, it should not affect validity of other sections.

In Equity. Separate suits by the Standard Oil Company of Louisiana, by the Texas Company, by the Pan-American Petroleum Corporation of Tennessee, a Delaware Corporation, and by the National Refining Company of Tennessee against Frank S. Hall, Commissioner of Finance and Taxation of the State of Tennessee, and others. On motions for temporary injunctions. Temporary injunction to issue in each case.

H. D. Minor, of Memphis, Tenn., for complainant Standard Oil Co.

John B. Keeble, of Nashville, Tenn., and Harry T. Klein, of New York City, for complainant Texas Co.

Clinton H. McKay, of Memphis, Tenn., and Earl L. Beatty, of New York City, for complainant Pan-American Petroleum Corporation.

McDonald & McDonald, Robert W. Hall, and Prather S. McDonald, all of Memphis, Tenn., for complainant National Refining Co.

L. D. Smith, Attorney General, of Tennessee, Charles T. Cates, Jr., of Knoxville, Tenn., H. N. Leech, of Clarksville, Tenn., and J. J. Lynch, of Chattanooga, Tenn., for defendants.

Before MOORMAN, Circuit Judge, and HICKS and GORE, District Judges.

PER CURIAM. These causes are submitted on motions for temporary injunctions enjoining defendants, who are officers of the state of Tennessee, from enforcing an act of the Tennessee Legislature (Acts 1927, c. 22), which undertakes to regulate the prices at which gasoline shall be sold in the state. The jurisdiction of the court as such rests upon constitutional grounds, as well as upon diversity of citizenship with the requisite amount involved. The equity jurisdiction of the court is invoked on the ground of threatened and oppressive prosecutions.

The act establishes a bureau under the department of finance and taxation, to be known as the division of motors and motor fuels, in charge of a superintendent, who is charged with the duty of collecting data pertaining to the cost and sale prices of gasoline. It is made unlawful for any person to engage in selling gasoline in intrastate commerce in Tennessee without first obtaining a permit from the superintendent of the division of motors and motor fuels. In applying for a permit, the dealer is required to state whether he proposes to sell at wholesale or retail, or both, the number and locations of his places of business, the prices at which he is selling gasoline at such locations, the cost price of the gasoline to him, including the refinery cost, transportation cost, and all other costs incident to its sale and distribution, the prices at which he proposes to sell, and such other information as the superintendent may require. It is the duty of the superintendent to issue the permit if in his opinion it is "in the interest of the public" and the prices at which the applicant proposes to sell do not exceed a reasonable profit, considering the proper differential between the wholesale and retail prices. If, however, the superintendent does not approve of the prices which the applicant proposes to charge, it is his duty to fix a price at which the gasoline "may be sold," and, if the dealer is dissatisfied, he may have the action of the superintendent reviewed by the commissioner of finance and taxation, and, if still dissatisfied, the commissioner's action may be reviewed in the courts.

It is further provided in the act that it shall be unlawful for any person to engage in selling gasoline in Tennessee, either at wholesale or retail, or to change the prices at which he is selling gasoline, without the consent of the superintendent. It is also made unlawful to grant any rebate to any customer or purchaser of gasoline, or to grant any concession or gratuity, directly or indirectly, to any purchaser or customer, or to discriminate against or in favor of any customer or purchaser "by selling at a different price to said purchasers in different localities in Tennessee, or to different purchasers in the same locality," except to the extent that such prices may be affected by the applicable freight rates. The Attorney General, with his assistants, is made the law officer of the division of motor and motor fuels, and is charged with the duty of enforcing the law and representing the public before the superintendent in respect to the price or prices the dealer may charge.

The act is assailed as violating the Fourteenth Amendment to the Constitution of the United States, in that it deprives the dealer of his property without due process of law, and denies to him the equal protection of the laws. It is also attacked on the ground that it violates section 8, article 1, of the Constitution of Tennessee, which contains guarantees similar to those of the Fourteenth

Amendment, and further because it undertakes to confer upon the chancery courts of the state administrative or legislative powers in violation of sections 1 and 2 of article 2 of the Constitution of the state, which provide that no person or persons belonging to one of the three separate and distinct departments into which the government of the state is divided shall exercise any power properly belonging to either of the others.

[1] Preliminarily to the constitutional questions argued it is contended for the state that complainants are not in position to invoke relief from a court of equity, because no property rights belonging to them have been affected by the act or can be affected by it until a price has been fixed at which they must sell their gasoline. It suffices, we think, to say in response to this that the act makes it unlawful to sell gasoline without having obtained a permit so to do from the superintendent of the division of motors and motor fuels, that it became effective from and after its passage, and that every sale of gasoline thereafter made by a dealer is under the terms of the act unlawful, and is punishable under section 6437, Shannon's Code, as a misdemeanor. Furthermore it is alleged in the bills as amended that the defendants are preparing to and will prosecute complainants for all violations of the act which they commit; indeed it is the duty of the Attorney General and his assistants, as well as the other prosecuting officers of the state, to prosecute all infractions of the law. Clearly, therefore, a continuation of the business of complainants would result in oppressive prosecutions which a court of equity may and should enjoin, if it should be determined that the act is invalid. Terrace v. Thompson, 263 U. S. 197, 44 S. Ct. 15, 68 L. Ed. 255, and authorities there cited.

[2] The act without doubt confers upon the superintendent of the division of motors and motor fuels the right and power to fix the prices at which gasoline shall be sold in the state. In this respect it has the effect of depriving both the seller and purchaser of freedom of contract. This right of contract, though subject to proper police regulation, has uniformly been held to be within the protection of the Fourteenth Amendment. Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832; Lochner v. New York, 198 U. S. 45, 25 S. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133; Adair v. United States, 208 U. S. 161; Adkins v. Children's Hospital, 261 U. S. 525, 43 S. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238. The state contends that the act was passed in the proper exercise of

its police power, and that, in addition to the presumptions in favor of its validity, the court should consider the judicial history of the gasoline industry in Tennessee which the General Assembly had before it and upon which it is presumed to have decided that the legislation was a necessary police regulation. After reciting preambulatorily that gasoline is now in general use in the state as a motor fuel for both public and private transportation, is necessary to the carrying on of the commerce of the state, and that the business of selling and marketing gasoline has become demoralized, because of attempts to destroy competition, and because of unfair and improper practices in the trade, the act declares that "the sale and marketing of gasoline in this state is impressed with public use," and then proceeds, as we have indicated, to establish a bureau which is authorized to fix the wholesale and retail prices at which it may be sold.

We do not find it necessary to consider the constitutionality of the act in respect to the several details that are argued, or in connection with the attempt, as claimed by complainants, to vest in the courts legislative or administrative powers, but proceed to consider whether being purely a price-fixing measure, as we think it is, it is valid under the Fourteenth Amendment. Most of the cases cited in argument and briefs were discussed in the recent opinion of the Supreme Court in Tyson v. Banton, 273 U. S. 418, 47 S. Ct. 426, 71 L. Ed. 718, where it was held that a statute of New York regulating the prices at which theater brokers, who purchased tickets from theater owners, might resell the tickets, deprived the broker of his freedom of contract guaranteed by the Fourteenth Amendment. There, as here, the act specifically declared that the subject-matter of the legislation was "affected with a public interest;" but the Supreme Court, reversing the judgment of the lower court, held that it was not so affected, that it was purely a private interest, and while evils in connection with theater ticket prices, as set out in the statute, undoubtedly existed, they could be corrected only by constitutional means, and not by the unconstitutional method of regulating or fixing prices. See, also, Wolf Packing Co. v. Industrial Court, 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280, and Fairmont Creamery Co. v. Minnesota, 274 U. S. 1, 47 S. Ct. 506, 71 L. Ed. 893. In the last-mentioned case the court, following the Tyson Case, held invalid, as impairing the freedom of contract, a state statute making it unlawful to

purchase cream at higher prices in one locality than in others, after allowing for differences in cost of transportation.

It is undoubtedly true, as the state contends, that with changing social and economic conditions there have been extensions of detailed public regulation. None of them, in our opinion, approaches the limits of this legislation. Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, was perhaps the first. It involved grain elevators standing at "the gateway of commerce," taking toll from all who passed, as in different degrees did Budd v. New York, 143 U. S. 517, 12 S. Ct. 468, 36 L. Ed. 247, and Brass v. North Dakota, 153 U. S. 391, 14 S. Ct. 857, 38 L. Ed. 757; and such elevators were held to be subject to public regulation, because they had come to hold "such a peculiar relation to the public" that government regulation was "superimposed upon them." In the later case of German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 S. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189, government regulation of insurance companies was sustained because of "considerations peculiar to the insurance business." It is to be remembered, however, that there are expressions in that opinion which the court said in the Tyson Case might be regarded as a warning "to be cautious about invoking the decision as a precedent for the determination of cases involving other kinds of business."

Furthermore, the businesses involved in that and other cases relied upon by the state were distinguished in their relation to the public interest in Adkins v. Children's Hospital, 261 U. S. 525, 43 S. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238, and in the Wolf Case, from the private enterprise of dealing in commodities—in fact, it was held in the Tyson Case that, in the absence of a controlling emergency, there is no legislative power to fix the prices of such commodities as provisions and clothing. It is, of course, true that in Wilson v. New, 243 U. S. 332, 37 S. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024, Block v. Hirsh, 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165, and Marcus Brown Holding Co. v. Feldman, 256 U. S. 170, 41 S. Ct. 465, 65 L. Ed. 877, statutes which in effect regulated prices and restricted the freedom of contract were upheld; but they, as the Supreme Court clearly pointed out in the Tyson Case, were emergency measures. This act does not purport, and indeed could not be said, to be such a measure; it is nothing but an attempt to fix the price at which one may sell or buy gasoline, a commodity, to be sure, in general use, and also necessary to the convenience, comfort and well being of the citizens of the state, but not more generally used or necessary than many other commodities which are bought and sold within the state.

[3] It is said that the statute may be upheld as a valid method of suppressing monopolies, which is declared to be one of its aims. We cannot concede that a purpose, however beneficent, may be effected by unconstitutional means. There is a statute of the state of Tennessee aimed at the suppression of monopolies, and although it may be, as suggested in argument, that the judicial history of the statute shows the ineffectiveness of that statute to correct monopolies in the gasoline business, it is nevertheless true, as said in the Tyson Case, that "evils are to be suppressed or prevented by legislation which comports with the Constitution, and not by such as strikes down those essential rights of private property protected by that instrument against undue governmental interference."

[4] While a statute should be considered in the light of the facts in the legislative mind when it was enacted, and is entitled to a presumption favoring validity, it is not the less the function of the courts to hold it invalid, if it be clearly opposed to the Constitution. Adkins v. Children's Hospital, 261 U. S. 525, 43 S. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238. Saving the alleged monopoly in the gasoline industry, which, if it existed, would not, as we have seen, justify the legislation, there is no fact or circumstance which could have actuated the Legislature in enacting this statute, that might not be found to support an enactment fixing the sale prices of other commodities, quite as indispensable to the comfort and welfare of the people of the state. Such other commodities, as well as gasoline, are assuredly affected in a sense with a public interest; they are furthermore exposed in their distribution and sale to the evils which are declared by the act in question to exist in the gasoline business. They are all related quite as intimately with the commerce of the state, and likewise with the welfare and comfort of the citizens of the state, as is gasoline. This statute makes no distinction between those who are seeking to suppress and those who are fostering competition, the wrongdoer and the innocent; it "spreads an all-inclusive net," as said in the Tyson Case. If it is upheld, there is no reasonable limit to the power of the state to regulate or fix the prices of such other commodities, and determine what one, whether wrongdoer or not, should receive for what he

has to sell and what he should pay for what he must buy—precisely what the Supreme Court has said cannot be done. In our opinion the legislation violates the Fourteenth Amendment.

[5] It is further argued for the state that, even though it be held that the act is invalid in so far as it attempts to confer upon the state the power to fix the prices at which gasoline shall be bought and sold, the purposes of the act are so varied and separable that it may and should be upheld in other particulars. If it may be said that, with the price-fixing features of the act stricken therefrom, the legislation would have been enacted, the entire act should not be declared invalid. The act itself provides "that if any section or provision of this act shall be held to be invalid this shall not affect the validity of other sections or provisions hereof." There are 13 sections in the act, the first of which is in the form of the preamble referred to. The next 9 deal in the main with the subject of regulating and fixing the prices of gasoline. Section 11 defines the term "gasoline," section 12 provides, as we have just stated, that, if any section of the act shall be held invalid, it shall not affect the other sections or provisions thereof, and section 13 provides only for the effective date of the act. It thus appears that the main purpose of the act was to regulate and fix the prices at which gasoline should be bought and sold, and it is inconceivable to us that, without that purpose, the legislation would have been enacted.

An injunction may issue in each case, temporarily enjoining and restraining defendants and each of them from instituting any prosecution under the act against the complainant therein, upon the giving of a bond, conditioned according to law, in the sum of $10,000.